IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DOS SANTOS, S.A., and
CROSS BRIDGE, LLC                                            PLAINTIFFS

           v.            Civil No. 05-5097

MIKE BEEBE, in his official
capacity as Attorney General,
State of Arkansas                                             DEFENDANT

### O R D E R

Now on this 22nd day of March, 2006, comes on for consideration **Plaintiffs' Motion For Preliminary Injunction** (document #10), and from said motion, and the response thereto, the Court finds and orders as follows:

1. Plaintiffs seek to enjoin, both preliminarily and permanently, enforcement of **A.C.A. §26-57-260-261**, as amended by **Act 384 of 2005.** This statute, in its pre-amended version, is referred to herein as the Escrow Statute. The amended form is referred to as the Allocable Share Amendment or simply the Amendment.

Plaintiffs initially contended that the Allocable Share Amendment violates a number of constitutional and statutory provisions. The Court dismissed all of plaintiffs' claims except their claims that retroactive application of the Allocable Share Amendment violates substantive and procedural due process, and this Order should be read in light of the factual background and legal analysis of the Court's March 6, 2006, Order addressing the motion to dismiss. The Court now turns to the issue of whether a

preliminary injunction against such retroactive application should issue.

2. The standards by which a motion for preliminary injunction should be judged are the familiar ones reiterated by the court in **Dataphase Systems, Inc. v. CL Systems, Inc.**, **640 F.2d 109 (8th Cir. 1981):**

> whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

**640 F.2d at 114.** In applying this test, the court in **Dataphase** emphasized that a pragmatic approach to the inquiry is called for. "[T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."

The burden of proving that these factors weigh in favor of granting an injunction rests with the moving party, Dos Santos. **Jensen v. Dole**, **677 F.2d 678 (8th Cir. 1982).**

The Court will examine each of the **Dataphase** factors in turn.

3. <u>The threat of irreparable harm to Dos Santos</u>:

At a hearing on the pending motion, Dos Santos presented the testimony of Mitchell Sivina, who testified that retroactive application of the Allocable Share Amendment placed Dos Santos in a loss position on its 2004 Arkansas sales. He testified that

while Dos Santos, a Spanish corporation, was not going out of business at the time of the hearing, it would not be able to compete in the Arkansas market if it had to recoup, out of its 2005 and later years' pricing, the funds it had expected to be refunded under the Escrow Statute for 2004. To do so would price its cigarettes out of the market in Arkansas.

Dos Santos also presented an affidavit from Sivina in connection with the pending motion. Sivina therein avers that because the funds escrowed by Dos Santos in 2004 were not released as they would have been under the Escrow Statute, Dos Santos was unable to meet its first quarterly escrow deposit for 2005 and, as a result, its products have been decertified for sale in Arkansas. Thus it is currently not able to do business in the State. Sivina also averred that the retroactive increase in cost of doing business "threatens Dos Santos' and Cross Bridge's fiscal viability."

In addition to this evidence of harm, the Court notes that significant civil penalties attend failure to make the escrow deposits required by the Escrow Statute - up to 300% of the amount withheld - and two violations will result in decertification of a tobacco manufacturer's products for a period of two years. **A.C.A. §26-57-261.** The exponential effects of these penalty provisions is readily apparent, and, taken together with the evidence adduced by Dos Santos, persuades the Court that Dos Santos has shown a

threat of irreparable harm.  Recoverable money loss may constitute irreparable harm if the loss threatens the existence of a business. **Packard Elevator v. I.C.C.**, **782 F.2d 112 (8th Cir. 1986).** "Irreparable harm has been found when one's allegedly unlawful actions will . . . cause another's ongoing business to terminate absent an injunction." **Gelco Corp. v. Coniston Partners**, **811 F.2d 414 (8th Cir. 1987).**

    4. <u>The balance between the harm to Dos Santos if an injunction is not granted, and the harm to Beebe if it is granted</u>:

The harm to Beebe if an injunction is granted appears relatively small.  The nature of preliminary injunctive relief sought by Dos Santos would require the State to treat 2004 escrow funds under the Escrow Statute rather than the Allocable Share Amendment.  The Escrow Statute provided for a partial refund of escrow deposits.  The money that would be refunded is not money belonging to the State, but rather funds which continue to belong to Dos Santos unless and until the State files suit against Dos Santos for tobacco-related health problems and obtains a favorable result.  Such a suit may never be filed.  If it is, Dos Santos will have been building a fund to answer any such judgment each year it does business in Arkansas subsequent to 2004. Given the length of time that it takes before tobacco-related health problems show up, if Dos Santos continues to sell its products in Arkansas, a significant escrow fund will have been accrued by the time it might

be needed, even if most of the 2004 escrow is refunded.

If the State ultimately prevails on the retroactivity issue now before the Court, the refunded amount would not be lost. The State can require Dos Santos to replace the funds in escrow, on pain of not being allowed to continue to do business in the State if it fails to do so.

In addition, as Dos Santos points out, the State was willing to work with two other tobacco manufacturers to maintain the status quo ante the Allocable Share Amendment on their 2004 escrow deposits.[1] This fact undermines the State's position that it will suffer greater harm than will Dos Santos if an injunction issues.

On balance, when the Court compares the harm that Dos Santos has shown evidence it will suffer from retroactive application of the amended statute to the harm the State claims will flow from issuance of a preliminary injunction, this factor weighs in favor of granting the preliminary injunction.

5. <u>The probability that Dos Santos will succeed on the merits of its case</u>:

The Court finds that this factor also weighs in favor of granting a preliminary injunction. As explained in the Court's

---

[1] In Grand River Enterprises Six Nations, Ltd., et al. v. Beebe, case number 05-5051, the parties submitted an Agreed Order pursuant to which the plaintiff would deposit into escrow "the net amount that would have been retained in escrow for sales that occurred in 2004 if Act 384 of 2005 had not been enacted into law," and that plaintiff's brands would not be decertified for failure to make the deposit that would have been required under the Amendment, without waiving any rights under the Amendment. In International Tobacco Partners, Ltd. v. Beebe, case number 05-5065, the parties submitted an Agreed Order pursuant to which the State agreed to release certain funds escrowed for 2004 to the plaintiff, without waiving any right to a full deposit under the Allocable Share Amendment.

Order dated March 6, 2006, defendant must show not only that the Allocable Share Amendment is justified by a rational legislative purpose, but also that its retroactive application is justified by a rational legislative purpose. See, e.g., **Pension Benefit Guaranty Corp. v. R.A. Gray & Co.**, **467 U.S. 717 (1984)**. While defendant justifies the Amendment as a benign effort to correct an unforseen mistake in the Master Settlement Agreement, the unforeseen loss of $490,000.00[2] can hardly seem benign to a commercial entity such as Dos Santos, and might well prove to be harsh and oppressive - the jurisprudential opposite of rational action.

    6.   <u>The public interest in this matter</u>:

The Court finds that the public has two types of interest in this matter, and that the two weigh in favor of opposite parties. One is the public health and safety concerns advanced by the defendant as justifying the tobacco litigation Master Settlement Agreement and the Escrow Statute and Allocable Share Amendment which arose out of that settlement. The other is the public interest in being able to rely on "settled expectations" with regard to laws enacted by the Arkansas Legislature to govern the business affairs of the State. The Court finds these interests to be of roughly equal weight in the **Dataphase** balance. If anything, the interest in knowing what law will govern business transactions

---

[2]This sum is based on the Sivina Affidavit.

appears stronger than the public health and safety concerns, because the health and safety concerns are at this point speculative vis a vis Dos Santos, whereas the interest in settled transactional law is not.

7.  Taking all of the foregoing into consideration, the Court concludes that, as to the issue of whether retroactive application of the Allocable Share Amendment violates substantive and procedural due process, the balance of equities favors Dos Santos, such that justice requires the Court to intervene to preserve the status quo ante enactment of the Amendment until the merits of this case are determined.  The Court will, therefore, enjoin defendant - on a preliminary basis - from enforcing the Allocable Share Amendment retroactively, as against Dos Santos' 2004 escrow deposits.

8.  Finding that preliminary injunctive relief is appropriate does not end the Court's inquiry, even as to preliminary disposition in this complicated matter.  Because Dos Santos' products have already been decertified by the State, the Court addresses the issue of whether the escrow funds in question should be physically returned to Dos Santos, or applied to Dos Santos' 2005 escrow obligations.

Defendant contends that Dos Santos cannot prove that the Amendment caused whatever injury it might have sustained from the decertification of its products.  It claims that those products

were decertified for three reasons:

* failure to provide required information on the annual Manufacturer Certification required by **A.C.A. §26-57-1303(a)(2)** for 2004;
* a shortfall in the 2004 escrow deposits of $5,003.41; and
* failure to make escrow deposits for the first quarter of 2005.

Dos Santos has offered evidence that it would have used its 2004 refund to make its 2005 quarterly deposits, and that such was a part of its business plan. Had those deposits been made, Dos Santos claims it would not have been decertified. Dos Santos does not respond to defendant's allegations that it did not fully comply with the Manufacturer Certification requirements or pay the full 2004 escrow amount.

The Court believes this issue requires an examination of the state of affairs as of the date the Motion For Preliminary Injunction was filed, August 11, 2005. If the monies that would have been refunded to Dos Santos from its 2004 escrow under the Escrow Statute would have sufficed to pay its 2005 escrow deposits up to that point, and if the other two alleged deficiencies would not have resulted in decertification, it is possible that the appropriate disposition of the funds affected by this Order would be to apply them first to Dos Santos' outstanding 2005 escrow requirements, and to return any overage to Dos Santos. Because the

Court does not have before it a sufficient evidentiary basis to determine the appropriate disposition of the funds, it directs the parties to confer, and if possible reach agreement on this matter. Failing that, the parties are to file simultaneous position papers, on or before April 28, 2006, as to the appropriate disposition of the funds.

**IT IS THEREFORE ORDERED** that **Plaintiffs' Motion For Preliminary Injunction** (document #10) is **granted**, and defendant is enjoined from enforcing **A.C.A. §26-57-260-261**, as amended by **Act 384 of 2005**, retroactively, as against Dos Santos' 2004 escrow deposits for the sales of tobacco products in the State of Arkansas.

**IT IS FURTHER ORDERED** that the parties are to meet and confer on the appropriate disposition of funds escrowed by Dos Santos for 2004 which would have been returned under the Escrow Statute, and which are the subject of this Order. If the parties are unable to agree on the disposition of such funds, they are to present simultaneous position papers, on or before April 28, 2006, as to the appropriate disposition of the funds.

**IT IS SO ORDERED.**

    **/s/ Jimm Larry Hendren**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**